(47 App. Div. 196.)
### HARTLOT PAPER CO. v. STATE.

(Supreme Court, Appellate Division, Third Department.　January 8, 1900.)

CONDEMNATION—WATER RIGHTS.

> All rights of riparian owners on the outlet of Lake S. to hamper the state in its control of the flow of the water to the E. Canal, and its right to open and close the gates of the reservoir, in its discretion, are cut off, by the judgment and award, from the time of payment of the award, in condemnation proceedings by a city; the judgment being that it is entitled to acquire all the rights which such owners have in and to the waters of the lake, and to any and all use and enjoyment thereof by reason of their ownership of their lands, excepting only such waters as may be "permitted or caused" to flow from the lake, by the state, for supplying the canal; and the award reciting that it is based on an appropriation by the city of all the water rights of said owners in and to the waters of the lake, with the right to store therein and divert therefrom so much of the waters thereof as shall not be required by the state for the canal.

Appeal from court of claims.

Action by the Hartlot Paper Company against the state of New York.　From a judgment for defendant, plaintiff appeals.　Reversed.

The claim presented, concerning which proof was given in the court of claims, was for damages alleged to have been suffered by plaintiff through the wrongful act of the agents of defendant in shutting the gates in the dam at the outlet of Skaneateles Lake, and thereby cutting off the supply of water to plaintiff's mill, situated on the outlet of the lake, and between the lake and the Erie Canal.　The time when such damage accrued is alleged to have been from February 1, 1894, to July 25, 1894, and again from December 2, 1894, to March 13, 1895.　There is no opinion, and the reasons for dismissing the claim are not stated.　There is some evidence that the gates were shut down during the periods stated, and some evidence in the case that plaintiff suffered some damage on that account, and the claim was presented within two years thereafter.　The city of Syracuse instituted, in 1892, proceedings in condemnation, which ripened into a judgment of condemnation on January 28, 1893.　Commissioners were appointed, and an award was made and confirmed May 10, 1894, and entered June 20, 1894.　The plaintiff was a party, and its rights as riparian owner to the flow of the water from the lake through the outlet were sought to be condemned in that proceeding.　The plaintiff was awarded $22,000.　The city of Syracuse deposited the money, and plaintiff drew it out on July 6, 1894, and has not returned it.

Argued before PARKER, P. J., and LANDON, HERRICK, KELLOGG, and MERWIN, JJ.

George Barrow, for appellant.

John C. Davies, Atty. Gen. (John H. Coyne, Dep. Atty. Gen., of counsel), for the People.

KELLOGG, J.　The rights of the state in the waters of Skaneateles Lake and in its outlet until it reaches the Erie Canal, its dominant power to control the same, as well as the rights of the riparian owners along the outlet between the lake and the canal, are pointed out and clearly defined in Waller v. State, 144 N. Y. 579, 39 N. E. 680.　That decision was rendered in 1895.　Prior to that time the courts had apparently, in every reported case, construed or assumed the rights of the state to be far greater.　Waller v. State recognizes the right of the state to maintain a dam at the outlet of this lake, to create a reservoir for water for the uses of the Erie Canal, and at the same

time denies the right, as against the riparian owners on the outlet, to close the gates of the dam for the purpose of repairs, or for the purpose of accumulating water in the reservoir, or holding it back, to serve the needs of the canal, or to let it flow, to serve the same needs, when such purposes could not be served without injury to the mills of riparian owners on the outlet. As a useful feeder to the Erie Canal, it had, by this decision, its limitations. In Sweet v. City of Syracuse (decided in 1891) 60 Hun, 40, 14 N. Y. Supp. 421, there is a clear declaration of exclusive ownership by the state of the waters of this lake and its outlet. Merwin, J., says:

"It seems to me, therefore, that we must assume that the appropriation of 1843 was not simply of what was required for the Erie Canal, but was just as broad as the resolution of the canal board made it,—'the waters of Skaneateles Lake and the outlet of the same.' It would then follow 'that, when the act of 1890 assumed to give to the city of Syracuse the right to take waters not required for the canal,' it would, if operative, give to the city the benefit of a portion of the title of the state; in other words, appropriate public property."

In the same case on appeal, in 1891 (129 N. Y. 335, 27 N. E. 1084), the court of appeals, O'Brien, J., writing, says:

"The only property right, therefore, which the state acquired or ever had in the waters of Skaneateles Lake and its outlet is the right to divert and use the same in such quantities as may be necessary for the use and operation of the canal. Subject to this paramount right, the riparian owners may use the waters of the lake and stream for domestic or manufacturing purposes."

Speaking of the act of 1890, under which the proceedings in condemnation were taken, Earl, J., in the same case (page 349, 129 N. Y., and page 294, 29 N. E.) says:

"After the so-called 'grant' or 'license' to the city of Syracuse, the state has still the same right and control over the water, for every purpose needed, that it ever had."

This was the accepted declaration of the rights of the state touching these waters at the time the condemnation proceedings were instituted, and at the time of the judgment, award, confirmation, and acceptance of the award by plaintiff. The rights of riparian owners along the outlet were only inferentially declared,—as subject to the superior rights of the state to maintain a reservoir, and use the waters for canal purposes, exclusive of all other rights. The right of riparian owners upon the outlet to hamper the state, and dictate when the gates of the reservoir should be opened and when closed, and thus impair, if not wholly defeat, the purposes of the state, and destroy the usefulness of the reservoir as a feeder, was certainly not admitted. It appears that, prior to the passage of the law of 1890 (chapter 314), amendatory of the act of 1889, the state, from time to time, in the exercise of a supreme power, and for the purposes of satisfying the needs of the canal, had shut down the gates of the reservoir, and at other times had opened the gates, and allowed the water to run down the outlet to the canal in greater volume than the needs of the mills along the stream required, and, on application of the mill owners, the legislature had passed laws authorizing the payment of damages. And it is not improbable that, by the laws of 1889 and 1890, the legislature intended, as a con-

dition to the acquirement of the right by the city of Syracuse to the use of the surplus water, which before belonged to the riparian owners, this claim of right on the part of these owners to hamper the state in the use of the reservoir as a feeder to the canal should also be extinguished. Beyond this, I see no purpose or object, either on the part of the state or the city. Such water as was needed for the Erie Canal always had passed, and always must pass, down this stream, over the premises and through the mills of these riparian owners. Nothing could be gained by the state or city in preventing its use as it flowed along. But the question here is not whether the extinguishment of this right to use the water turned into the stream by the state to supply the needs of the canal was imposed upon the city by the legislature, or whether the judgment of condemnation or the award covered this right of the riparian owners. The only question is whether the right to hamper the state in its control of the flow of the water,—its right to open and to close the gates of the reservoir, in its discretion,—was covered by the judgment and award. I think it clearly was. Something was condemned. Something substantial, for a substantial award was made and accepted. The state had an interest in having this right, if it existed,— and the legislature had recognized its existence, and Waller v. State declares it did exist,—extinguished. The judgment is broad enough to include it, and so is the award. The judgment reads:

"Is entitled to condemn and acquire and extinguish all the rights, title, and interest which the defendants, and each of them, respectively, have of, in, and to the waters of Skaneateles Lake and its watershed, and to any and all use and enjoyment thereof by reason of their ownership of or interest in the premises severally described in the amended petition herein, and as appurtenant or incident to said premises, * * * excepting only such and so much water from said lake as may be permitted or caused to flow from said lake into the outlet thereof, from time to time, by the state of New York, its officers and agents, for the purpose of supplying the Erie Canal with water."

The award reads as follows:

"To Hartlot Paper Company, * * * for the property and water rights, and for depreciation in value of property described as 'No. 11' in the petition and judgment herein, the sum of twenty-two thousand dollars ($22,000). * * * The foregoing awards of compensation are based upon an appropriation by the city of Syracuse of all the water rights of the several claimants of, in, and to the waters of Skaneateles Lake and its watershed, with the right to store in said lake, and to divert therefrom, as may at any time be authorized by law, so much of the waters of said lake and its watershed as shall not be required by the state of New York for the Erie Canal, and upon the depreciation in value of the several properties described in the petition and judgment in this proceeding, and embrace the compensation which ought justly to be made by the city of Syracuse to the several claimants therein."

This judgment and this award are wholly inconsistent with the idea of a retention by the plaintiff of any previously asserted right to dictate as to the control of the water in the lake, any right to open the gates of the reservoir or to close them, any right to dictate, to either state or city, as to what quantity of water, or when water, should run in the outlet. All the rights which this plaintiff possessed in this respect were embraced in the appraisal and award, and extinguished. I see no other possible conclusion. And I do

not see as it makes any difference, so far as the disposition of this case goes, whether the right to use the water which the state may cause to run through the outlet to the canal is covered by the judgment and award or not. It was entirely competent, and not impossible, to measure the quantity of water the needs of the canal required. Two generations of use for such purpose ought to furnish reasonable data for such measurement. It is simply speculative to suggest that the Erie Canal may be abandoned, and then no water may run in the outlet. The greater likelihood points to enlargement of the canal, greater needs for water, and consequently greater volume in the stream. The history of this water way suggests progression, not retrogression. Measurement of the quantity taken in the past furnishes a most favorable standard of value for the riparian owner. Hence I see no element of uncertainty in the description of the property to be taken in this proceeding; none, certainly, which can make the judgment and award void, and leave with the plaintiff $22,000 of the money of the city.

I think, however, that the court of claims was in error in determining—as it appears they must have determined—that the plaintiff's rights to the use of the water, and its rights to require the opening of the gates of the reservoir, as determined in the Waller Case, were cut off prior to July 6, 1894, the date of deposit and acceptance of the award. The rights of plaintiff, such as they were, continued to that date. I think this is too plain to require discussion. No rights of the plaintiff were disturbed until the city of Syracuse had done what the act contemplated. Until it obtained possession of plaintiff's rights, or extinguished them by actual payment, the relations existing between plaintiff and this defendant were not changed. In re New York & B. Bridge, 137 N. Y. 99, 32 N. E. 1054.

The judgment should be reversed, and a new trial granted; costs to abide the event. All concur.